1   **WO**

2

3

4

5                    **IN THE UNITED STATES DISTRICT COURT**

6                         **FOR THE DISTRICT OF ARIZONA**

7

8   Mitchell L Tate,                                   No. CV-23-01203-PHX-SMM

9                    Plaintiff,                         **ORDER**

10  v.

11  Progress Residential LLC,

12                   Defendant.

13

14          This matter is before the Court on Defendant's Motion to Compel Arbitration.

15  (Doc. 16). The Motion is fully briefed. (Docs. 16, 17, 18). For the following reasons, the

16  Court denies the Motion.

17  **I.     BACKGROUND**

18      Plaintiff Mitchell Tate rented a residential property managed by Defendant Progress

19  Residential LLC. (Doc. 1 at 2). Beginning in the fall of 2022, Defendant began contacting

20  Plaintiff through Plaintiff's cellular phone, "attempting to collect purported past due rent

21  obligations." (Id.) These calls, of which Plaintiff reports dozens, were in the form of

22  automated or prerecorded voice messages. (Id. at 3) Plaintiff believed that the calls were

23  in error because Plaintiff was current on his rent payments. (Id.) Plaintiff contacted

24  Defendant and demanded that the calls cease because Plaintiff did not owe any past due

25  rent to Defendant. (Id.) Despite Plaintiff's demand, the calls continued. (Id.)

26          On June 30, 2023, Plaintiff brought claims against Defendant for violations of the

27  Telephone Consumer Protection Act (TCPA) and the Georgia Fair Business Practices Act

28

1    (GFBPA). (Id. at 1). Plaintiff brings the TCPA claim as a putative nationwide class

2    action. (Id. at 4).

3         On September 7, 2023, Defendant filed the Motion to Compel Arbitration that is

4    now before the Court. (Doc. 16). Defendant argues that Plaintiff agreed to the Terms of

5    Use[1] of Defendant's website when Plaintiff submitted his online rental application.

6    Contained in Defendant's Terms of Use is an Arbitration Clause that provides, in relevant

7    part, that "Any claim or dispute arising out of or relating to these Terms of Service or the

8    Services will be settled by binding arbitration." (Doc. 16-3 at 31).

9         Plaintiff filed a Response in opposition to the Motion to Compel Arbitration,

10   contending that the Plaintiff did not agree to Defendant's Terms of Use, and even if

11   Plaintiff had agreed, the Arbitration Clause does not cover the claims that Plaintiff brings

12   against Defendant. (Doc. 17). The Motion is fully briefed. (Docs. 16, 17, 18)

13   **II.    LEGAL STANDARD**

14        The enforceability of arbitration agreements in contracts is governed by the

15   Federal Arbitration Act (FAA). 9 U.S.C. § 1 et seq; see Kramer v. Toyota Motor Corp.,

16   705 F.3d 1122, 1126 (9th Cir. 2013). As arbitrability is a matter of contract, "a party

17   cannot be required to submit to arbitration any dispute which he has not agreed so to

18   submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).

19   As a general matter, "any doubts concerning the scope of arbitrable issues should be

20   resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr.

21   Corp., 460 U.S. 1, 24–25 (1983).

22        The Court considers two factors when determining whether a dispute should be

23   resolved through arbitration: "(1) whether there is an agreement to arbitrate between the

24   parties; and (2) whether the agreement covers the dispute." Brennan v. Opus Bank, 796

25   F.3d 1125, 1130 (9th Cir. 2015) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S.

26   79, 84 (2002)). If both queries may be answered in the affirmative, the Court must

27   enforce the arbitration agreement. See Lifescan Inc. v. Premier Diabetic Servs., Inc., 363

28   ───────────────
     [1] The phrases "Terms of Use" and "Terms of Service" are used interchangeably on
     Defendant's webpage and will be referred to as "Terms of Use" for consistency.

1   F.3d 1010, 1012 (9th Cir. 2004). The Court does not consider the merits of the claim or

2   any available defenses when determining arbitrability, but instead solely considers

3   whether the arbitration agreement is enforceable. Chiron Corp. v. Ortho Diagnostic Sys.,

4   Inc., 207 F.3d 1126, 1131 (9th Cir. 2000).

5          The Court applies state law to determine the validity of the agreement as a whole

6   and federal substantive law to determine the scope of the arbitration provision. See

7   Kramer, 705 F.3d at 1126, 1128. The Court "interpret[s] the contract by applying general

8   state-law principles of contract interpretation, while giving due regard to the federal

9   policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in

10  favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir.

11  1996) (citing Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 914 (9th Cir.

12  1993), cert. denied, 512 U.S. 1205 (1994)). When all claims in an action are subject to

13  arbitration, courts will generally grant a dismissal of the action. Sparling v. Hoffman

14  Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988); see also Johnmohammadi v.

15  Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014).

16  **III.   DISCUSSION**

17         The parties dispute whether Plaintiff agreed to the Arbitration clause contained in

18  Defendant's Terms of Use and whether the Arbitration clause encompasses Plaintiff's

19  claims. Defendant argues that Plaintiff agreed to the Arbitration clause when Plaintiff

20  submitted his online rental application with Defendant. (Doc. 16-1 at 5–7). Plaintiff

21  contends that Defendant's Terms of Use are contained in a "browsewrap" fashion and

22  thus Plaintiff was never required to accept the Terms. (Doc. 17 at 5–6). Plaintiff further

23  argues that even if Plaintiff did agree to the Terms of Use, Plaintiff's claims fall outside

24  the scope Defendant's Terms of Use and thus are not subject to arbitration. (Id. at 11–12).

25  Defendant disputes Plaintiff's characterization of the Terms of Use and contends that the

26  Terms of Use is a valid "clickwrap" agreement because Plaintiff was required to

27  affirmatively indicate assent to the Terms in Plaintiff's rental application. (Doc. 18 at 7–

28  8).

1    Determining whether this action should be subject to mandatory arbitration
2    requires that the Court consider the two factors identified by the Ninth Circuit in
3    Brennan: (1) whether the parties agreed to arbitrate potential claims, and if so, (2)
4    whether the scope of the arbitration agreement encompasses Plaintiff's claims. 796 F.3d
5    at 1130. The Court applies Arizona law to determine the validity of the Terms of Use.
6    See Kramer, 705 F.3d at 1128. The choice of law provision in the Terms of Service,
7    immediately following the Arbitration Clause, provides that "[t]hese Terms of Service are
8    governed by the laws of the State of Arizona without regard to its conflict of law
9    provisions." (Docs. 16-1 at 10, 16-3 at 31). Plaintiff does not contest the application of
10   Arizona law to this analysis. (Doc. 17).
11   The parties dispute whether Defendant's Terms of Use are best characterized as a
12   "browsewrap" or a "clickwrap" agreement. The Ninth Circuit considered these types of
13   contracts in Nguyen v. Barnes & Noble Inc., in which the court distinguished the forms
14   of website-based agreements as follows:

15   Contracts formed on the Internet come primarily in two flavors:
16   "clickwrap" (or "click-through") agreements, in which website users are
17   required to click on an "I agree" box after being presented with a list of
18   terms and conditions of use; and "browsewrap" agreements, where a
19   website's terms and conditions of use are generally posted on the website
20   via a hyperlink at the bottom of the screen.

21   763 F.3d 1171, 1175–76 (9th Cir. 2014). The validity of either form of agreement
22   depends on whether there was a mutual manifestation of assent by the parties. Id. at 1175.
23   Whereas a clickwrap agreement requires the user to signal assent to terms and conditions,
24   a browsewrap agreement, by definition, does not require the user to affirmatively indicate
25   assent to the terms of use. Id. at 1176. Consequently, the validity of a browsewrap
26   agreement depends on whether the user has actual or constructive knowledge of the terms
27   of use. Id. If the circumstances compel the conclusion that the user had actual or
28   constructive knowledge of the terms, such as "where the website contains an explicit

1   textual notice that continued use will act as a manifestation of the user's intent to be

2   bound," then the user's continued use of the website may be found to validate a

3   browsewrap agreement. Id. at 1177. Factors considered in determining whether a

4   reasonably prudent user would have had inquiry notice of a browsewrap agreement

5   include the conspicuousness of the hyperlink to the Terms of Use, other notices given to

6   the user, and the design of the website. Id. The Court in Nguyen reaffirmed the

7   unwillingness of courts to enforce browsewrap agreements and held that:

8       [W]here a website makes its terms of use available via a conspicuous

9       hyperlink on every page of the website but otherwise provides no notice to

10      users nor prompts them to take any affirmative action to demonstrate

11      assent, even close proximity of the hyperlink to relevant buttons users must

12      click on—without more—is insufficient to give rise to constructive notice.

13  Id. at 1178–79.

14      The Terms of Use at issue is available on Defendant's website and are hyperlinked

15  at various locations. The initial presentation of Defendant's Terms of Use can be found at

16  Defendant's landing page at rentprogress.com, which displays a banner at the bottom of

17  the screen that states, "By using this site, you agree to the Terms of Service and Privacy

18  Policy." The Terms of Use and Privacy Policy are hyperlinked at the underlined text.

19  Within the Terms of Use is the Arbitration clause that Defendant seeks to enforce, which

20  provides, in relevant part. that "[a]ny claim or dispute arising out of or relating to these

21  Terms of Service or the Services will be settled by binding arbitration." (Doc. 16-3 at 31).

22      Defendant identifies several junctures at which Defendant argues that Plaintiff

23  assented to the Terms of Use. (Doc. 18 at 10–11). Defendant's primary argument is that

24  Plaintiff agreed to the Terms of Use at the "Additional Information" page of the rental

25  application Plaintiff submitted, where Plaintiff was prompted to—and did—agree to the

26  statement "I agree to abide by the terms and conditions set forth in this lease application."

27  (Docs. 16-1 at 10–11, 16-3 at 26, 18 at 10–11). However, no hyperlink is contained in the

28  statement; consequently, the Terms are neither a pure browsewrap nor a pure clickwrap

1   agreement. Due to the absence of a hyperlink at this specific juncture, Defendant's
2   argument relies on the cumulation of hyperlinked references to the Terms of Use in
3   combination with the final indication of assent to the unlinked "terms and conditions set
4   forth in this lease application," to support Defendant's conclusion that Plaintiff assented
5   to the Terms. In order to determine whether the parties formed a valid agreement to
6   arbitrate, the Court evaluates each reference to the Terms of Use in turn.

7       As an initial matter, the Court finds that the display of the Terms of Use at the
8   rentprogress.com landing page, when taken in isolation, is presented in a "browsewrap"
9   fashion and does not bind Plaintiff to the Terms of Use. This finding is consistent with
10  Nguyen, in which the Ninth Circuit found that the mere availability of a hyperlink to
11  terms of use that otherwise does not prompt the user's affirmative assent does not bind
12  the user to the terms of use. 763 F.3d at 1178–79. Neither party disputes that Plaintiff
13  used Defendant's website in order to submit a rental application. However, though the
14  Terms of Use are hyperlinked on the landing page, the user is not required to
15  affirmatively manifest assent to the terms. Accordingly, this display does not suffice to
16  create a valid contract between the parties.

17      This conclusion also applies to the first references to the Terms of Use in the
18  rental application which Plaintiff submitted. At two pages of the rental application there
19  are displayed hyperlinked prompts which read "Check out our Terms & Privacy" or
20  "please read our Terms & Privacy." By their plain language, although these prompts do
21  direct the user to the Terms & Privacy, neither indicates that the user *agrees* to the Terms
22  & Privacy. The user is not required to follow the hyperlinks or acknowledge the Terms in
23  any manner before proceeding to the next page of the rental application. As such, these
24  references to the Terms are also presented in a browsewrap fashion and do not bind
25  Plaintiff to the Terms of Use.

26      Another instance at which Defendant argues that Plaintiff agreed to the Terms of
27  Use is at the "Screening Information" page of the rental application, at which the user is
28  required to indicate assent to the statement "I have read the Renter Screening section of

1   the Terms and Conditions, and I authorize the use of the information and contacts
2   provided in this application to complete a credit, reference, and/or background check.
3   Click here to read the Terms and Conditions." (Docs. 18 at 10–11, 16-3 at 24). The word
4   "here" is a blue hyperlink. The Court is not persuaded that this indication of assent
5   suffices to manifest Plaintiff's agreement to the Terms of Service for two reasons: first,
6   because it directs the Plaintiff to read only a specific section of the "Terms and
7   Conditions," and second, because the neither the Terms of Use nor the Privacy Policy
8   contain a "Renter Screening" section. It is unclear what the user is directed to, and the
9   Court is not inclined to interpret this ambiguous reference as binding Plaintiff to
10  Defendant's Terms of Use.

11          Defendant's chief argument is that Plaintiff assented to the Terms of Use when
12  Plaintiff indicated assent to the statement "I agree to abide by the terms and conditions
13  set forth in this lease application" at the "Additional Information" page of the application.
14  As characterized by Defendant, "[o]n the Additional Information page of the
15  rentprogress.com website, there was a dropdown menu next to the statement 'I agree to
16  abide by the terms and conditions set forth in this lease application.'" (Doc. 18 at 7).
17  Plaintiff selected "yes" for this statement. However, as noted earlier, the statement
18  contains no hyperlink. Defendant argues that because the Terms are hyperlinked at the
19  next question of the application, which concerns the privacy policy, and were hyperlinked
20  at various prior junctures of the application, this set of factors is sufficient to conclude
21  that Plaintiff assented to the Terms of Use.

22          Because there is no hyperlink to expressly denote what the user agrees to, the
23  statement in Defendant's application incorporates a separate agreement. This Court
24  recently had occasion to address an online agreement in which the incorporation of a
25  separate document was at issue. See Cottonwood Ctrs. Inc. v. Klearman, No. CIV 18-
26  252-TUC-CKJ, 2018 WL 5084657 (D. Ariz. Oct. 18, 2018). The Court observed that
27  "[i]ncorporation of a separate document and agreement requires "the reference must be
28  clear and unequivocal and must be called to the attention to the other party, [the other

1    party] must consent thereto, and the terms of the incorporated document must be known

2    or easily available to the contracting parties." Id. at *5 (citing United Cal. Bank v.

3    Prudential Ins. Co. of Am., 681 P.2d 390, 420 (Ariz. Ct. App. 1983)); see also Edwards v.

4    Venma Nutrition, No. CV-17-02133-PHX-DCG, 2018 WL 637382, at *3 (D. Ariz. Jan.

5    31, 2018). The Court held that the parties had not validly agreed to arbitrate because the

6    plaintiff was not required to open the separate document and there was no

7    acknowledgement of the incorporation that indicated the plaintiff's consent. Id. at *6.

8         The Court finds that Plaintiff's assent to "the terms and conditions set forth in this

9    lease application" does not bind Plaintiff to Defendant's Terms of Use because the

10   reference is ambiguous. The lack of a hyperlink at this critical juncture requires that the

11   reference to the Terms of Use be "clear and unequivocal" in order to create a binding

12   agreement under Arizona law. See United Cal. Bank, 681 P.2d at 420. However, it is

13   unclear that "terms and conditions" refers to a specific, separate document. Whereas

14   previous references to the Terms of Use clearly titled and hyperlinked the document, the

15   same cannot be said for this reference. Consequently, the terms of the incorporated

16   document could not be "known or easily available" to Plaintiff because it is unclear what

17   "terms and conditions set forth in this application" refers to. This deficiency could have

18   been remedied with the addition of a hyperlink and usage of the proper nouns "Terms of

19   Use" or "Terms of Service." See, e.g., Berman v. Freedom Financial Network, LLC, 30

20   F.4th 849, 858 (9th Cir. 2022) ("This notice defect could easily have been remedied by

21   including language such as, 'By clicking the Continue >> button, you agree to the Terms

22   & Conditions.'"). As the Ninth Circuit observed in Nguyen, "consumers cannot be

23   expected to ferret out hyperlinks to terms and conditions to which they have no reason to

24   suspect they will be bound." 763 F.3d at 1179.

25        Defendant cites to two unpublished Ninth Circuit cases in which the court held

26   that the plaintiffs had validly agreed to arbitrate the disputes because the defendants'

27   webpages displayed text indicating that the user agreed to the Terms of Use whenever the

28   plaintiffs signed in or placed an order. See Dohrmann v. Intuit, Inc., 823 F. App'x 482,

484 (9th Cir. 2020); see also Lee v. Ticketmaster LLC, 817 F. App'x 393, 394 (9th Cir. 2020). These cases are distinct from the action now before the Court in two important respects: first, the Terms of Use were visibly hyperlinked at the point at which the user was required to acknowledge or assent to the Terms, and second, the references clearly stated the titles of the incorporated documents. See Dorhmann, 823 F. App'x at 484; see also Lee, 817 F. App'x at 394–95. Neither are true of the reference to Defendant's Terms of Use contained at the "Additional Information" page of the Application.

In sum, Defendant's argument that the Terms of Use is a valid clickwrap agreement relies on a cumulation of references to the Terms to support the conclusion that Plaintiff agreed to be bound. However, the Court finds that Defendant's online rental application failed at each of these instances to secure Plaintiff's unambiguous assent to Defendant's Terms of Use. All of the references are either pure browsewrap agreements or are too ambiguous to have placed Plaintiff on notice of the Terms. As such, the first Brennan factor is not satisfied because there is no valid agreement to arbitrate between the parties. 796 F.3d at 1130.

## IV.    CONCLUSION

The Court finds Plaintiff did not agree to the Terms of Use set forth on Defendant's website and, as such, there is no valid agreement to arbitrate between the parties. The Court thus denies the Motion to Compel Arbitration. (Doc. 16).

Accordingly,

**IT IS ORDERED denying** Defendant's Motion to Compel Arbitration. (Doc. 16).

**IT IS FURTHER ORDERED** that Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

Dated this 12th day of February, 2024.

Honorable Stephen M. McNamee
Senior United States District Judge